[No. S155944. Nov. 17, 2008.]

THOMAS LEE GOLDSTEIN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GRAND JURY OF LOS ANGELES COUNTY et al., Real Parties in
Interest.

## COUNSEL

Kaye, McLane & Bednarski, Ronald O. Kaye, David S. McLane, Marilyn E. Bednarski and Matthew N. Sirolly for Petitioner.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, and Gordon W. Trask, Principal Deputy County Counsel, for Real Party in Interest Los Angeles County Grand Jury.

Collins, Collins, Muir & Stewart, John J. Collins, Tomas A. Guterres, Douglas Fee and Eric C. Brown for Real Parties in Interest County of Los Angeles, John Van de Kamp and Curt Livesay.

## OPINION

**CORRIGAN, J.**—Here we hold that California courts do not have a broad inherent power to order disclosure of grand jury materials to private litigants. In *Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117 [86 Cal.Rptr.2d 623, 979 P.2d 982] (*Daily Journal*), this court ruled that "the superior court's powers to disclose grand jury testimony are only those which the Legislature has deemed appropriate." (*Id.* at p. 1128.) "[I]f superior courts could disclose materials based only on their inherent powers, the statutory rules governing disclosure of grand jury testimony would be swallowed up in that large exception." (*Ibid.*)

In this case, the Court of Appeal decided that courts have inherent power to order disclosure of grand jury materials to a private litigant, in the interests of justice. The court distinguished *Daily Journal* on the basis that it involved disclosure to the public. We reverse. The Legislature has authorized

limited disclosure of grand jury materials to private parties, and the Court of Appeal's holding creates a broad exception that would swallow the statutory rules, just as in *Daily Journal*.

The Court of Appeal also held that no statute authorized the disclosure of grand jury materials to petitioner Thomas Lee Goldstein. However, Penal Code section 924.2 does permit the disclosure of grand jury testimony to determine whether it is consistent with a witness's subsequent testimony.[1] Goldstein may be able to obtain limited releases of grand jury transcripts under this provision.

## BACKGROUND

In 1979 Goldstein was an engineering student and Marine Corps veteran with no criminal history. He became a murder suspect after an eyewitness to an unrelated shooting saw the gunman enter Goldstein's apartment building. No witness or forensic evidence connected Goldstein with the murder victim, but Long Beach police detectives showed Goldstein's photograph, among others, to Loran Campbell, an eyewitness to the homicide. Campbell did not recognize anyone in the photo lineup, and Goldstein did not match Campbell's description of the suspect. However, a detective asked if Goldstein could have been the person Campbell saw running from the scene. Campbell said it was possible, though he was not certain.

Goldstein was arrested and placed in a jail cell with Edward Floyd Fink, a heroin addict and convicted felon. At Goldstein's trial, Fink testified that Goldstein said he was in jail because he shot a man in a dispute over money. Fink claimed he received no benefit as a result of his testimony. Goldstein was convicted of murder in 1980. In 1988, the Los Angeles County Grand Jury began an investigation into the use of jailhouse informants. In 1990, it issued a public report concluding that misuse of jailhouse informants had been pervasive over the preceding 10 years. The grand jury found that the Los Angeles County District Attorney's Office had demonstrated a "deliberate and informed declination to take the action necessary to curtail the misuse of jailhouse informant testimony." Among other deficiencies, it had failed to create a centralized index of potential impeachment information about informants, including any benefit they received for their testimony and their history of cooperation with law enforcement.

The Superior Court of Los Angeles County ordered that "material accumulated and used by the 1988–89 Grand Jury and the 1989–90 Grand Jury in their investigations of the jailhouse informants is to be kept secure by the

---

[1] Further undesignated statutory references are to the Penal Code.

court. [¶] The material is not to be viewed, inspected or copied except by order of the Presiding Judge, Assistant Presiding Judge, or the Supervising Judge of the Criminal Division."

After the grand jury released its report, Goldstein sought a writ of habeas corpus in federal court. At an evidentiary hearing in August 2002, Loran Campbell recanted his identification of Goldstein. Campbell admitted he had been overanxious to help the police. He had identified Goldstein based on what the police told him and his desire to be a good citizen, not on his observations on the night of the murder. Goldstein also presented evidence that Fink had received benefits for cooperating with law enforcement. The magistrate found Campbell credible, and stated: "It is readily apparent to this Court that Fink fits the profile of the dishonest jailhouse informant that the Grand Jury Report found to be highly active in Los Angeles County at the time of [Goldstein's] conviction." Goldstein's petition was granted. He was released from custody in April of 2003, after serving 24 years in prison.

In November 2004, Goldstein filed suit in federal court against the City of Long Beach, four Long Beach police detectives, the County of Los Angeles, and two members of the Los Angeles County District Attorney's Office. He stated causes of action under the federal civil rights statute, 42 United States Code section 1983, including claims that the defendants wrongfully obtained his conviction based on their pattern and practice of misusing the testimony of jailhouse informants.

Goldstein first sought access to the grand jury material held by the court in a February 2006 letter to the Presiding Judge of the Los Angeles County Superior Court and the supervising judge of the court's criminal division. Counsel for the superior court replied that the material would not be disclosed because no statutory exception to the rule of grand jury confidentiality appeared to apply. When Goldstein's counsel said he was willing to abide by a protective order limiting use of the material to the civil rights case, the court's counsel evidently indicated that a subpoena would be needed to release the grand jury material.

In July 2006, Goldstein served a federal court subpoena on the superior court requesting production of the grand jury materials. The court's counsel objected, asking Goldstein to withdraw the subpoena and seek access under the 1990 order of the superior court by "appropriate motion before the Presiding Judge, the Assisting Presiding Judge, or the Supervising Judge of the Criminal Division of the Superior Court." Goldstein complied with this request. In September 2006 he filed a motion seeking access to the grand jury materials under sections 924.2, 929, and 939.1.

Counsel for the County of Los Angeles responded to the motion on behalf of the grand jury in January 2007. County counsel contended the controlling authority was *Socialist Workers Party v. Grubisic* (7th Cir. 1980) 619 F.2d 641. *Grubisic* requires a party seeking disclosure in a federal action to first submit a request to the state court that supervised the grand jury, to determine if there is a continuing need for secrecy. If not, the grand jury materials may be disclosed. If the state court decides the materials should remain secret, the federal court then determines whether the need for disclosure outweighs the need for secrecy, under the test provided in *Douglas Oil Co. v. Petrol Stops Northwest* (1979) 441 U.S. 211, 222 [60 L.Ed.2d 156, 99 S.Ct. 1667] (*Douglas Oil*). (*Grubisic, supra*, at p. 644.) County counsel suggested that the court appoint a special master to review the grand jury materials and recommend which records might be disclosed. Goldstein disputed the need for secrecy and opposed the appointment of a special master, contending it would only cause unnecessary delay.

In March 2007, the court heard argument on the motion and denied Goldstein's request, concluding that the statutes on which he relied did not authorize disclosure of the grand jury materials.[2] Goldstein challenged this ruling by seeking a writ of mandate. He contended disclosure was permitted under sections 924.2 and 929.[3] The grand jury and the County responded that the statutes did not authorize disclosure to Goldstein. The grand jury, however, conceded that the federal court would be able to compel disclosure if the circumstances justified it, and faulted Goldstein for failing to pursue his remedy by way of federal subpoena.

---

[2] County counsel appeared on behalf of the grand jury. The county and the individual county defendants were represented by counsel who were privately retained in Goldstein's pending federal court civil rights action. This arrangement of legal representation for real parties in interest continued in the Court of Appeal and in this court. Henceforth, we refer to the county and the individual county defendants collectively as "the County."

[3] Section 924.2 provides: "Each grand juror shall keep secret whatever he himself or any other grand juror has said, or in what manner he or any other grand juror has voted on a matter before them. Any court may require a grand juror to disclose the testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court, or to disclose the testimony given before the grand jury by any person, upon a charge against such person for perjury in giving his testimony or upon trial therefor."

Section 929 provides: "As to any matter not subject to privilege, with the approval of the presiding judge of the superior court or the judge appointed by the presiding judge to supervise the grand jury, a grand jury may make available to the public part or all of the evidentiary material, findings, and other information relied upon by, or presented to, a grand jury for its final report in any civil grand jury investigation provided that the name of any person, or facts that lead to the identity of any person who provided information to the grand jury, shall not be released. Prior to granting approval pursuant to this section, a judge may require the redaction or masking of any part of the evidentiary material, findings, or other information to be released to the public including, but not limited to, the identity of witnesses and any testimony or materials of a defamatory or libelous nature."

The Court of Appeal granted Goldstein's petition and directed the superior court to reconsider his motion to determine whether disclosure was required in the interests of justice, under the *Douglas Oil* test. The court rejected Goldstein's statutory claims. However, though no party had briefed the issue, it decided that California law permitted the superior court to exercise its inherent authority to prevent injustice in a particular case. The court relied on a quotation from a treatise in *Ex Parte Sontag* (1884) 64 Cal. 525, 526 [2 P. 402] (*Sontag*), and decided that *Daily Journal* did not apply because it concerned only public disclosure of grand jury proceedings. We granted review.

## DISCUSSION

We briefly outline the positions taken by the parties. The grand jury and the County dispute the notion that California courts have inherent authority to order disclosure of grand jury materials, and maintain that no statute supports Goldstein's request for disclosure.[4] The grand jury continues to contend that Goldstein might have obtained disclosure by pursuing a federal court subpoena.[5] In its reply brief, however, the grand jury concedes it is unclear whether the federal court could compel disclosure if the state court were to rule that the grand jury materials should remain confidential.[6]

Goldstein claims the Court of Appeal's decision does not conflict with *Daily Journal*, and is consistent with the statutory scheme governing the release of grand jury materials. Alternatively, he argues that even if courts lack inherent power to order disclosure to private litigants, statutory authority for the discovery he seeks is found in sections 924.2 and 929.

---

[4] The County also argues that Goldstein's statutory claims are beyond the scope of our grant of review. However, we "may decide any issues that are raised or fairly included in the petition or answer." (Cal. Rules of Court, rule 8.516(b)(1).) Goldstein did include his statutory arguments in his answer to the petition for review, and they are properly before us.

[5] The grand jury claims there is no apparent reason for Goldstein's failure to present the superior court with a federal subpoena in connection with his motion for disclosure. It asserts that this failure deprived the trial court of the opportunity to address "the potentially dispositive effect of U.S. District Court process." However, the record clearly establishes that Goldstein did present the court with a federal subpoena. Then, at the court's specific request, he withdrew his subpoena and followed the court's direction to proceed by motion instead.

[6] The County vigorously contends that federal law affords no basis for compelling disclosure in contravention of state law. Goldstein argues that the federal court may compel disclosure by the superior court, and urges us not to grant state court litigants a lesser right of access to grand jury materials than is available in federal court.

Goldstein is, of course, free to renew his attempt to obtain discovery by federal subpoena. Because he withdrew his subpoena below, we have no occasion to consider the extent of federal court authority to compel disclosure over the objection of a state court. We note, however, that there is a conflict in the federal cases on this point. (Compare *Socialist Workers Party v. Grubisic, supra*, 619 F.2d at pp. 644–645 with *Camiolo v. State Farm Fire and Cas. Co.* (3d Cir. 2003) 334 F.3d 345, 359, fn. 10.)

■ The law regarding disclosure of evidentiary materials gathered by a grand jury was comprehensively analyzed in two decisions by this court, *Daily Journal, supra*, 20 Cal.4th 1117, and *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162 [245 Cal.Rptr. 774, 751 P.2d 1329] (*McClatchy*). In *McClatchy*, we noted: "The California grand jury has three basic functions: to weigh criminal charges and determine whether indictments should be returned (§ 917); to weigh allegations of misconduct against public officials and determine whether to present formal accusations requesting their removal from office (§ 922; see Gov. Code, § 3060 et seq.); and to act as the public's 'watchdog' by investigating and reporting upon the affairs of local government (e.g., §§ 919, 925 et seq.). Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California. [Citations.]" (*McClatchy, supra*, 44 Cal.3d at p. 1170.)

*McClatchy* arose from a decision by a civil grand jury to make public the evidentiary materials it gathered during an investigation into Fresno County's award of a computer service contract. The superior court struck the portion of the grand jury report announcing the intended disclosure, and sealed the evidentiary materials. (*McClatchy, supra*, 44 Cal.3d at pp. 1167–1168.) The Court of Appeal ordered release of the materials, reasoning that a court may refuse to file a grand jury report only when the grand jury has violated an explicit statutory limitation. (*Id.* at p. 1169.) This court disagreed, holding that the superior court acted properly to ensure the grand jury did not exceed its statutory authority. (*Id.* at p. 1184.)

Reviewing the statutes governing the functions of the grand jury, we concluded that the Legislature intended to incorporate the common law tradition of preserving the secrecy of grand jury proceedings. (*McClatchy, supra*, 44 Cal.3d at pp. 1172–1174.) The interests underlying that tradition were identified in *Douglas Oil*: "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." (*Douglas Oil, supra*, 441 U.S. at p. 219, fn. omitted; see *McClatchy*, at pp. 1174–1175.)

The *McClatchy* court observed that "the encouragement of candid testimony and the protection of witnesses and their reputations are best achieved when secrecy is maintained even after the conclusion of a grand jury

investigation." (*McClatchy, supra,* 44 Cal.3d at p. 1175.) It also emphasized that secrecy is essential for both the indictment and "watchdog" functions of the grand jury. "The importance of secrecy is well established in the context of the grand jury's criminal indictment function. By the same token, when the grand jury conducts a watchdog investigation of local government operations as in the instant case, secrecy appears equally vital. Compared with indictment proceedings, the efficacy and credibility of watchdog investigations no less require that witnesses testify without fear of reproach by their peers or their superiors. Though the watchdog investigation and report serve a different social purpose than the criminal indictment, eliciting candid testimony is obviously critical to both functions of the grand jury." (*Ibid.*) "Secrecy also serves to protect the reputations of those who may be unjustly accused during the course of a watchdog investigation." (*Id.* at p. 1176.)

█ "Recognizing the important purposes served by grand jury secrecy, the Legislature has enumerated only three situations in which disclosure of raw evidentiary materials is permitted. First, by court order the testimony of a witness may be disclosed to determine whether it is consistent with testimony given before the court or when relevant to a charge of perjury. (§ 924.2; [citation].) Secondly, section 938.1, subdivision (b), provides that when an indictment is returned, transcripts of testimony taken before the grand jury are to be delivered to the defendant and thereafter filed for public access. [Citation]. [¶] And finally, evidentiary materials gathered by one grand jury may be disclosed to a succeeding grand jury. (§ 924.4 . . . .) Section 924.4 represents the grand jury's only statutory authority to undertake disclosure of its evidentiary materials on its own initiative."[7] (*McClatchy, supra,* 44 Cal.3d at p. 1178, fns. omitted.)

█ In *McClatchy,* we rejected the idea that the grand jury has intrinsic power to disclose evidentiary material to the public. "Broad though they are, the grand jury's powers are only those which the Legislature has deemed appropriate." (*McClatchy, supra,* 44 Cal.3d at p. 1179.) We noted several statutes indicating that the Legislature intentionally withheld from grand juries the statutory authority to disclose raw evidentiary materials. Section 939.1, for instance, provides for a grand jury to hold public proceedings only upon a joint request by the foreman and the district attorney or Attorney General, and with the superior court's approval. (*McClatchy,* at p. 1179.) Most significantly, section 924.4 permits evidence to be passed on to a succeeding grand jury, indicating that statutory authority is required even for this limited form of disclosure. The legislative history of section 924.4 showed that its enactment was a response to the preexisting prohibition on

---

[7] Ten years after the *McClatchy* decision, the Legislature passed section 929, which provides civil grand juries with an avenue for releasing evidentiary materials, though the scope of disclosure is strictly limited.

the disclosure of evidence by a grand jury. That prohibition would apply with even more force to public disclosure. "[F]urther, if before section 924.4 was enacted in 1975 the grand jury was actually empowered to disclose evidence and other materials as it pleased, the Legislature's grant of specific authority to release such materials to succeeding grand juries would have been unnecessary and the enactment of section 924.4 meaningless." (*McClatchy*, at p. 1181.)

█ In *Daily Journal*, we concluded that the superior court as well as the grand jury itself has no general inherent power to disclose evidentiary materials, for the same reasons discussed in *McClatchy*. "To paraphrase *McClatchy*: Broad though they are, the superior court's powers to disclose grand jury testimony are only those which the Legislature has deemed appropriate." (*Daily Journal, supra*, 20 Cal.4th at p. 1128.) The *Daily Journal* case began when the superior court responded to media requests by ordering the disclosure of all transcripts and documents from a criminal grand jury investigation into an investment banking firm's underwriting of Orange County debt offerings. (*Id*. at pp. 1120–1121.) The Court of Appeal held that the superior court had acted within its "inherent power to order the release of otherwise secret grand jury materials whenever the advantages gained by secrecy are outweighed by a public interest in disclosure." (*Id*. at p. 1121.)

We reversed, following the contours of the *McClatchy* analysis. We noted two other statutes authorizing disclosure, in addition to those mentioned in *McClatchy*. If a grand jury returns no indictment, section 924.6 permits the court that impaneled the grand jury to disclose relevant and admissible evidence to the parties in a pending or subsequent criminal proceeding. (*Daily Journal, supra*, 20 Cal.4th at pp. 1127–1128, fn. 6.) And section 929, enacted in 1998, authorizes a civil grand jury, with the court's approval, to release unprivileged evidentiary materials to the public, so long as the names of witnesses and any facts identifying the witnesses are withheld. (*Daily Journal*, at p. 1124; for the text of § 929, see fn. 3, *ante*.) We also reviewed earlier cases adhering to the limits set by the Legislature on the disclosure of grand jury proceedings (*People v. Tinder* (1862) 19 Cal. 539, 545; *Sontag, supra*, 64 Cal. at pp. 527–528), and on the powers of the grand jury in general (*Allen v. Payne* (1934) 1 Cal.2d 607, 608–609 [36 P.2d 614]). (*Daily Journal*, at pp. 1124–1125; see also *McClatchy, supra*, 44 Cal.3d at p. 1179.)

█ In *Daily Journal*, as in *McClatchy*, we rested our holding on the need to maintain the integrity of the statutory provisions governing disclosure of grand jury materials. "[I]f superior courts could disclose materials based only on their inherent powers, the statutory rules governing disclosure of grand jury testimony would be swallowed up in that large exception." (*Daily Journal, supra*, 20 Cal.4th at p. 1128; see *McClatchy, supra*, 44 Cal.3d at

p. 1181.) "Under the legislative scheme, once it has impaneled and charged the grand jury, the superior court's powers are narrowly circumscribed; it has very limited authority to review the grand jury's work and none to dictate its functions. (See Pen. Code, §§ 915–944.) Thus, . . . we conclude that whatever exercise of authority to disclose grand jury materials has not been expressly permitted by the Legislature is prohibited." (*Daily Journal*, at pp. 1128–1129.)

Goldstein argues that the Court of Appeal properly distinguished *McClatchy* and *Daily Journal* on the basis that they involved disclosures to the public, rather than to a private litigant. We disagree. The statutory scheme governs disclosure to litigants (§§ 924.2, 924.6, 938.1) as well as to the public (§§ 929, 938.1, 939.1). If the courts had broad inherent authority to release grand jury materials to litigants in the interests of justice, there would be no need for the statutes permitting disclosure in limited circumstances. We have not distinguished between public and private disclosure. Indeed, we relied on the statutes governing disclosure to litigants to support our holdings restricting public disclosure in both *McClatchy* and *Daily Journal*.

Preserving the secrecy of watchdog grand jury proceedings furthers important public interests: witnesses are encouraged to provide candid testimony free from outside influence, and the reputations of those who may be unjustly accused are protected. (*McClatchy, supra*, 44 Cal.3d at p. 1176.) These considerations are fully applicable when disclosure is sought by a private litigant. Witnesses may very well fear the effects of disclosure to parties interested in the subject of a grand jury investigation, and the reputations of those under investigation may be damaged by revelations made in the course of litigation. Vesting the courts with wide discretion to overlook statutory restrictions on disclosure and provide private parties with access to grand jury evidentiary materials "in the interests of justice" would not only place those secrecy interests at risk, it would also pull the teeth from the statutory limitations.

The Court of Appeal relied on *Douglas Oil, supra*, 441 U.S. 211, and *Sontag, supra*, 64 Cal. 525, in ruling that state courts have inherent authority to order the disclosure of grand jury materials in the interests of justice. Neither of these cases, however, supports that conclusion. In *Douglas Oil*, civil litigants in an antitrust case sought transcripts from a criminal grand jury investigation. (*Douglas Oil*, at p. 213.) The *Douglas Oil* court, after noting the interests served by grand jury secrecy (see p. 226, *ante*), observed: "At the same time, it has been recognized that in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings. [Citation.] Indeed, recognition of the occasional need for litigants to have access to grand jury transcripts led to the provision

in Fed. Rule Crim. Proc. 6 (e) (2) (C) (i) that disclosure of grand jury transcripts may be made 'when so directed by a court preliminarily to or in connection with a judicial proceeding.' " (*Douglas Oil*, at pp. 219–220.)

The *Douglas Oil* test for determining when the traditional secrecy of the grand jury may be broken,[8] and the cases on which the court relied in formulating that test, depend on the authority of the federal rule governing disclosure. (Fed. Rules Crim.Proc., rule 6(e), 18 U.S.C.; *Douglas Oil, supra*, 441 U.S. at p. 222; *United States v. Procter & Gamble* (1958) 356 U.S. 677, 679, fn. 1, 681, fn. 5 [2 L.Ed.2d 1077, 78 S.Ct. 983]; *Dennis v. United States* (1966) 384 U.S. 855, 869–870 [16 L.Ed.2d 973, 86 S.Ct. 1840].) There is no similar California provision for disclosure " 'when so directed by a court.' "[9] (*Douglas Oil*, at p. 220; see current Fed. Rules Crim.Proc., rule 6(e)(3)(E), 18 U.S.C.; *People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403, 427 [92 Cal.Rptr.2d 829].) The Court of Appeal believed the broad terms of the federal rule merely reflect the judiciary's "inherent responsibility to prevent injustice." California, however, has taken a different approach. Our statutes give the courts discretion to order disclosure only in limited circumstances. As *McClatchy* and *Daily Journal* make clear, when the Legislature has placed specific restrictions on the release of grand jury materials, and refrained from providing the courts with general authority to go further, there is no room for the courts to fashion broadly applicable standards like those articulated in *Douglas Oil*.

The *Sontag* opinion says nothing different. There, in proceedings to set aside an indictment, a grand juror was held in contempt of court for refusing to disclose whether he had voted for the indictment. This court observed: "The form of the oath, in general use for centuries, binds the grand juror to preserve inviolate the secrets of the grand jury room. Public policy would seem to forbid vain disclosures made to gratify idle curiosity. 'But,' says Thompson and Merriam, 'when, for the purposes of public justice, or for the protection of private rights, *it becomes necessary*, in a court of justice, to disclose the proceedings of the grand jury, the better authorities now hold that this may be done. . . .' (Thom. & Mer. on Juries, § 703.)" (*Sontag, supra*, 64 Cal. at p. 526.)

---

[8] "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." (*Douglas Oil, supra*, 441 U.S. at p. 222.)

[9] The only arguably analogous provision in the California statutes was deleted by the Legislature in 1983. Earlier, the grand juror's oath included a promise not to disclose things said before the grand jury "except when required in the due course of judicial proceedings." (Former § 911, as amended by Stats. 1975, ch. 298, § 1, p. 743; see *Sontag, supra*, 64 Cal. at pp. 527–528.) The 1983 amendments to section 911 omitted this exception. (Stats. 1983, ch. 111, § 4, p. 280.)

The Court of Appeal seized on the last sentence quoted above as authority for its holding. However, the *Sontag* court dispelled any notion that California courts have broad inherent power to order the disclosure of grand jury proceedings in the interests of justice. It noted that some cases cited by the Thompson and Merriam treatise permitted grand jurors to disclose whether there were 12 votes for indictment, but others forbade such inquiry, and no case held that grand jurors could be compelled to reveal their own votes. (*Sontag, supra*, 64 Cal. at pp. 526–527.) The court did not then formulate a judicial disclosure policy. To the contrary, it declared: "In this State the whole matter is regulated by statute."[10] (64 Cal. at p. 527.)

The governing statute then, as now, prohibited grand jurors from disclosing their votes. (*Sontag, supra*, 64 Cal. at p. 527; see § 924.2.) The *Sontag* court noted that the statutes recognized exceptions only to permit testing the consistency of witnesses' grand jury testimony with their subsequent testimony. (*Sontag*, at p. 527.) The court rejected the argument that in the case before it, the grand juror's testimony was required for purposes of the defendant's motion to set aside the indictment. "The mere inconvenience or difficulty of proving the fact ought not to overrule the many grave objections to a procedure not only not directly authorized, but expressly forbidden by the Code, which may interfere with the complete freedom of exposure of alleged offenses which it is the design of the institution of grand juries to secure, and conflict with other principles of public policy which are subserved by keeping inviolate the secrets of the grand jury room—except when their disclosure is absolutely necessary." (*Sontag*, at p. 528.)

Neither the Court of Appeal nor Goldstein, in his briefing here, relied on the *Sontag* court's mention of absolute necessity, and for obvious reasons. The Court of Appeal did not restrict its rule permitting disclosure of grand jury materials to instances of absolute necessity. Goldstein, as the grand jury points out, has the grand jury report and was able to secure his release on habeas corpus without the evidentiary materials he is seeking for use in his civil rights lawsuit. Thus, it is apparent that his position is not one of

---

[10] Whether this statement in *Sontag* is taken as a reference to disclosure of grand jury proceedings in general (see *Daily Journal, supra*, 20 Cal.4th at p. 1124), or read more narrowly as a statement about the matters an individual grand juror may be compelled to disclose, it is inconsistent with the "interests of justice" exception created by the Court of Appeal. The defendant in *Sontag* asserted that justice required disclosure of the grand juror's vote. As discussed above, the *Sontag* court rejected that claim and adhered to the limited statutory exceptions to the rule of grand jury secrecy.

necessity, but of "mere inconvenience or difficulty of proving the fact[s]" needed to make his civil case in federal court. (*Sontag, supra,* 64 Cal. at p. 528.)[11]

We turn now to Goldstein's statutory claims, which were summarily rejected by the Court of Appeal. Goldstein relies, as he did below, on sections 924.2 and 929. While the Court of Appeal properly found no basis for disclosure under section 929, we conclude that section 924.2 does apply to Goldstein's request, though not as broadly as he asserts.

■ Section 929 was enacted in 1998, years after the issuance of the grand jury report at issue here. Even if it were applicable to Goldstein's request (see *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230–231 [46 Cal.Rptr.3d 57, 138 P.3d 207]), this statute allows a grand jury, with court approval, to make evidentiary materials "available to the public" after redacting the names of witnesses and any information reflecting their identity. (§ 929.) Here, the 1990 grand jury performed no such redaction, and released no information to the public. Rather, it specified that the materials "be preserved under secure conditions." The trial court order implementing this directive strictly prohibited viewing, inspection, or copying except by permission of the court. Thus, neither the grand jury nor the court made evidentiary materials "available to the public," and section 929 would not permit the discovery Goldstein seeks.

■ Goldstein has a better argument under section 924.2, which allows "[a]ny court [to] require a grand juror to disclose the testimony of a witness

---

[11] This court has on one other occasion noted, in dicta, a potential nonstatutory avenue of disclosure. In *Shepherd v. Superior Court* (1976) 17 Cal.3d 107 [130 Cal.Rptr. 257, 550 P.2d 161] (overruled on another point in *People v. Holloway* (2004) 33 Cal.4th 96, 131 [14 Cal.Rptr.3d 212, 91 P.3d 164]), the court observed that "there may be cases of urgent and particularized need in which those policies [supporting grand jury secrecy] must be made to yield to some extent in order to accommodate the demands of truth and fairness in civil litigation." (*Shepherd,* at p. 127.) *Shepherd* cited federal law to support this " 'compelling necessity' " exception. (*Ibid.,* quoting *United States v. Procter & Gamble, supra,* 356 U.S. at p. 682.) For reasons discussed above, federal authority is not persuasive on this point. (See p. 230, *ante.*) However, such a limited exception might be deemed consistent with the *Sontag* court's dictum contemplating disclosure when "absolutely necessary." (*Sontag, supra,* 64 Cal. at p. 528.)

We have no occasion in this case to consider the viability of such a narrow exception. Nor did we in *Daily Journal,* where we reviewed a sweeping ruling that courts could order disclosure whenever the benefits of releasing grand jury materials outweigh the advantages of maintaining secrecy. (*Daily Journal, supra,* 20 Cal.4th at pp. 1121–1122.) We leave for another day whether a private litigant may obtain disclosure of grand jury materials without express statutory authorization, on a showing of absolute necessity. Arguably, there might be circumstances in which such an exception could operate without eroding the interests served by grand jury secrecy. (See, e.g., *People v. Superior Court (Mouchaourab), supra,* 78 Cal.App.4th at pp. 427–434.) This, however, is not such a case.

examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court." Goldstein overstates the scope of this statute, which permits disclosure only for impeachment of witnesses, not for general discovery. However, his claim that section 924.2 applies to transcripts of grand jury testimony has merit.

The Court of Appeal ruled that section 924.2 "has no application here," observing that the statute was meant to limit the circumstances in which grand jurors could be called as witnesses. This reading of the statute is unduly restrictive. As Goldstein notes, the relevant provisions of section 924.2 date from a period when grand jury proceedings were not transcribed. (See Stats. 1851, ch. 29, § 218, pp. 235–236; former § 926, enacted in 1872; *Sontag, supra,* 64 Cal. at p. 527; *People v. Superior Court (Mouchaourab), supra,* 78 Cal.App.4th at p. 416.) When the Legislature did provide for transcription, it evidently did so to facilitate the use of grand jury testimony for impeachment purposes.[12]

Given this background, section 924.2 should not be construed to bar the use of transcripts of grand jury witness testimony. " '[O]ur task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the [statute's] general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results.' " (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462]; see also *People v. Superior Court (Mouchaourab), supra,* 78 Cal.App.4th at p. 428.) It would be unreasonable to require grand jurors to appear at trial to provide their recollections of witness testimony, when transcripts of that testimony are readily available.

The Court of Appeal also reasoned that Goldstein made no claim that a witness at his federal trial would give testimony inconsistent with the witness's grand jury testimony. However, section 924.2 does not require a party to make a showing or claim of conflicting testimony without access to

---

[12] "Provision for the recording of grand jury proceedings was first added to the Penal Code in 1897. At that time, the Legislature authorized the reporting and transcribing of testimony in criminal cases by amending former section 925 to provide that '[t]he grand jury, on the demand of the District Attorney, whenever criminal causes are being investigated before them, must appoint a competent stenographic reporter to report the testimony that may be given in such causes in shorthand, and reduce the same afterward, upon the request of the said District Attorney, to longhand; a copy of the said testimony so taken must be delivered to the defendant in any such criminal cause upon the arraignment after indictment of the said defendant.' (Stats. 1897, ch. 142, p. 204; *In re Kennedy* (1904) 144 Cal. 634, 635 [78 P. 34].) The reporting of testimony was deemed to be 'for the benefit of the district attorney—probably for the purpose of preventing witnesses of a certain character from safely giving testimony before the trial jury different[] from that which they have given before the grand jury.' (144 Cal. at p. 638.)" (*People v. Superior Court (Mouchaourab), supra,* 78 Cal.App.4th at p. 416.)

the transcripts in some form. The statute contemplates disclosure "for the purpose of *ascertaining* whether [grand jury testimony] is consistent with that given by the witness before the court." (§ 924.2, italics added.)

Thus, the Court of Appeal erred by holding that section 924.2 does not apply to Goldstein's request for disclosure. But Goldstein goes too far by arguing that section 924.2 does not restrict the trial court's discretion over the extent of the grand jury material that may be disclosed. He claims that *all* the grand jury transcripts and other evidentiary materials may be released to him under section 924.2. Nothing in the statutory language supports that interpretation, which would entirely "swallow[] up" the limited provisions for disclosure prescribed by the Legislature. (*Daily Journal, supra,* 20 Cal.4th at p. 1128.) It would transform this narrow exception, expressly confined to impeachment, into a general discovery provision.

 The trial court denied Goldstein's request under section 924.2 in part because no witness was before it. The court correctly interpreted the statute in this respect. Section 924.2 permits disclosure only for purposes of impeachment. It does not authorize a litigant to obtain unlimited disclosure in advance of a witness's testimony. To preserve the narrow scope of the statute, the appropriate procedure is for the witness to testify first. Counsel may then request the court to examine the transcript of that witness's grand jury testimony in camera, to determine if it provides potentially relevant impeachment material. If it does, the court may release the relevant pages to counsel, with a protective order restricting the use of the material to impeachment.

We leave it for the superior court and the federal district court, with the cooperation of the parties, to sort out additional appropriate procedures for providing Goldstein with access to the testimony of grand jury witnesses under section 924.2, should he seek that limited form of disclosure.

## DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**KENNARD, J.,** Concurring.—I concur in the majority opinion, which I have signed. I write briefly to express my view on a question that the majority opinion does not decide (see maj. opn., *ante,* at p. 232, fn. 11) but that, in my view, merits clarification: the extent to which a trial court retains nonstatutory power to order disclosure of grand jury proceedings.

In *Ex Parte Sontag* (1884) 64 Cal. 525 [2 P. 402] (*Sontag*), this court stated that "principles of public policy . . . are subserved by keeping inviolate the

secrets of the grand jury room—*except when their disclosure is absolutely necessary.*" (*Id.* at p. 528, italics added.) Almost a century later, in *Shepherd v. Superior Court* (1976) 17 Cal.3d 107 [130 Cal.Rptr. 257, 550 P.2d 161], this court suggested that "there may be cases of urgent and particularized need . . ." in which the policies underlying grand jury secrecy "must be made to yield to some extent in order to accommodate the demands of truth and fairness in civil litigation." (*Id.* at p. 127.) Read together, these two decisions imply that courts may order disclosure of grand jury materials based on a showing of absolute necessity by the party requesting disclosure.

But thereafter, in *Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117 [86 Cal.Rptr.2d 623, 979 P.2d 982] (*Daily Journal*), this court held that "the superior court's powers to disclose grand jury testimony are only those which the Legislature has deemed appropriate." (*Id.* at p. 1128.) We explained: "By enacting the statutes governing the 'exceptional cases' [(*Sontag, supra*, 64 Cal. at p. 527)] in which a court may order disclosure of grand jury materials, the Legislature has, in effect, occupied the field; absent express legislative authorization, a court may not require disclosure." (*Id.* at pp. 1124–1125.) And today this court, echoing its holding in *Daily Journal*, concludes that "the superior court as well as the grand jury itself has no general inherent power to disclose evidentiary materials . . ." that have been presented before the grand jury. (Maj. opn., *ante*, at p. 228.) In the wake of these two decisions, is the "absolute necessity" exception discussed earlier still a viable concept? I think it is.

It is true that the governing statutory scheme permits disclosure of grand jury proceedings only in certain circumstances specified by statute. (See *Daily Journal, supra*, 20 Cal.4th at pp. 1122–1124; *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1178 [245 Cal.Rptr. 774, 751 P.2d 1329].) But the Legislature cannot preclude such disclosure when preclusion would deny the requesting party the right to due process guaranteed under the state and federal Constitutions. Only in that circumstance does a trial court retain the power to order disclosure of grand jury proceedings.[1]

---

[1] Of note here is the Court of Appeal's decision in *People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403 [92 Cal.Rptr.2d 829]. There, the petitioners, who had been indicted on various charges, sought disclosure of the prosecutor's opening remarks, closing remarks, and argument, as well as the superior court's answers to questions asked by members of the grand jury. According to the petitioners, this information was necessary to prepare their motions to dismiss the indictments. (Pen. Code, § 995.) The majority held that the authority to order discovery of these materials was implicit in the statutory scheme allowing a defendant to move to set aside a grand jury indictment "on the basis that the district attorney failed to advise of exculpatory evidence or failed to advise as to the limited admissibility of evidence." (*Mouchaourab, supra*, 78 Cal.App.4th at p. 428.) Writing separately, Justice Mihara observed in his concurring opinion that the right to discover the materials in question arose not

Here, petitioner does not rely on the absolute necessity exception, nor does he contend that to deny him access to the grand jury materials at issue would violate his right to due process under the state and federal Constitutions. Rather, he asks this court to affirm the holding by the Court of Appeal in this case that the trial court possessed, and should have exercised, the broad power to disclose such materials in the interests of justice. But, as the majority opinion points out, "[t]he Legislature has authorized limited disclosure of grand jury materials to private parties, and the Court of Appeal's holding creates a broad exception that would swallow the statutory rules." (Maj. opn., *ante*, at pp. 221–222.)

**MORENO, J.,** Concurring.—If his allegations are to be believed, Thomas Lee Goldstein suffered an injustice as a result of the failure of our judicial system that is difficult to conceive—serving 24 years in prison for a crime he did not commit—and now seeks through a civil lawsuit to gain some small measure of the justice that has previously eluded him. I agree with the majority that the strong policy in favor of grand jury secrecy generally does not permit discovery of grand jury transcripts and materials except for that which fits into the narrow categories defined by statute. I also agree with the majority that Penal Code section 924.2[1] is one avenue Goldstein may use to access grand jury materials. But as the majority also acknowledges, its position, and that of courts of the state for over 125 years, is consistent with a recognition of an "absolute necessity" exception to the rule against discovery of grand jury materials. (See *Ex Parte Sontag* (1884) 64 Cal. 525, 526, 528–529 [2 P. 402] (*Sontag*).) I write separately to affirm that there is indeed such an absolute necessity exception, and to explain in my view what showing a civil litigant must make in order to fit within that exception.

We affirmed in *Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1129 [86 Cal.Rptr.2d 623, 979 P.2d 982]) that "whatever exercise of authority to disclose grand jury materials has not been expressly permitted by the Legislature is prohibited." (See also *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1179 [245 Cal.Rptr. 774, 751 P.2d 1329] (*McClatchy*).) Yet "it is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].) Neither *Daily Journal* nor *McClatchy*, both of which involved requests by the press for public disclosure of grand jury materials, considered a case in which nondisclosure would cause injustice to a civil or criminal litigant. As explained below, our cases strongly suggest that disclosure would be available on the proper showing of need and the

from the statutory scheme but "from the California Constitution's guarantee of due process." (*Id.* at p. 441 (conc. opn. of Mihara, J.).)

[1] All statutory references are to this code unless otherwise indicated.

resulting injustice if disclosure is not made, and when the disclosure would not undermine the goals underlying grand jury secrecy.

As an initial matter, this court has long recognized "common law principles as supplementary to the applicable California statutes relating to grand juries." (*People v. Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430, 440, fn. 11 [119 Cal.Rptr. 193, 531 P.2d 761]; see also *Fitts v. Superior Court* (1936) 6 Cal.2d 230, 240–241 [57 P.2d 510].) In *Fitts*, the court concluded that the concurrence of 12 grand jurors was necessary to return an accusation against a public official. Although no statute spoke to the issue, the court based its conclusion on the common law. "The grand jury system is a product of the common law. . . . The members of the first constitutional convention in providing for a grand jury must have had in mind the grand jury as known to the common law. . . . The convention of 1879, like the convention of 1849, by failing to make further provisions as to the grand jury left to the legislature all questions affecting the grand jury not expressly covered by the Constitution. The Constitution of 1879 did not attempt to change the historic character of the grand jury, and the system its members had in mind was evidently the same system that had come down to them from the common law. It is in no sense a statutory grand jury as distinguished from the common-law grand jury as claimed by the respondents." (*Fitts, supra,* 6 Cal.2d at pp. 240–241.)

We have also recognized that common law principles should be employed as a means of interpreting statutes related to grand jury secrecy. (*McClatchy, supra,* 44 Cal.3d at pp. 1172–1173.) Although grand jury secrecy was the rule under common law, an exception was recognized under certain circumstances when a breach of secrecy is in furtherance of justice. As stated in an 1882 treatise more or less contemporaneous with our second constitutional convention, and quoted in *Sontag*: "But when, for the purposes of public justice, or for the protection of private rights, it becomes necessary, in a court of justice, to disclose the proceedings of the grand jury, the better authorities now hold that this may be done," subject to certain exceptions. (Thompson & Merriam on Juries (1882) § 703, p. 740 (Thompson & Merriam), quoted in *Sontag, supra,* 64 Cal. at p. 526.) The "better authorities" to which the treatise refers are state judicial authorities reflecting the development of the common law. (Thompson & Merriam, *supra,* at p. 740, fn. 4, and cases cited therein.) In *Sontag*, the question was whether a defendant attempting to have his indictment set aside could require a grand juror to declare whether he voted for the indictment. (*Sontag, supra,* 64 Cal. at p. 526.) After quoting the treatise above, the court discussed various cases and treatises that addressed that particular question and then declared that "[i]n this State the whole matter is regulated by statute." (*Id.* at p. 527.) It proceeded to expound on former section 903, which, inter alia, expressly prohibited grand jurors from disclosing how they or other grand jurors voted.

The *Sontag* court then concluded: "It is contended that the right to move on the ground that the indictment was not properly found necessarily includes the right to prove the fact by the testimony of those only who can know the fact. But there are many legal rights which cannot be established by certain witnesses. . . . The mere inconvenience or difficulty of proving the fact ought not to overrule the many grave objections to a procedure not only not directly authorized, but expressly forbidden by the Code, which may interfere with the complete freedom of exposure of alleged offenses which it is the design of the institution of grand juries to secure, and conflict with other principles of public policy which are subserved by keeping inviolate the secrets of the grand jury room—*except when their disclosure is absolutely necessary.*" (*Sontag, supra*, 64 Cal. at p. 528, italics added.)

In *Shepherd v. Superior Court* (1976) 17 Cal.3d 107 [130 Cal.Rptr. 257, 550 P.2d 161], plaintiffs sued the City of Emeryville and various city officials in connection with the alleged wrongful death of their son at the hands of several Emeryville police officers. They sought to discover materials in the possession of the Alameda County District Attorney that had been presented to the Alameda County Grand Jury, which had refused to return an indictment against the police officers. (*Id.* at pp. 113–114.) The court rejected the Alameda County District Attorney's argument that denial of the grand jury material was supported by *United States v. Procter & Gamble* (1958) 356 U.S. 677, 683 [2 L.Ed.2d 1077, 78 S.Ct. 983] (*Procter & Gamble*), in which the court held that wholesale discovery of grand jury transcripts was not available absent a "compelling necessity." First, the *Shepherd* court pointed out that the plaintiff did not "seek to learn what evidence was or was not presented to the grand jury, or the content of that body's deliberations upon it. What she seeks are materials which may or may not have been so presented. We do not perceive that any significant derogation of the policies underlying grand jury secrecy is here at stake." (*Shepherd, supra*, 17 Cal.3d at p. 127.) Second, "as the high court was careful to point out, there may be cases of urgent and particularized need in which those policies [of secrecy] must be made to yield to some extent in order to accommodate the demands of truth and fairness in civil litigation. Although the ' "indispensable secrecy of grand jury proceedings" [citation] must not be broken except where there is a compelling necessity [,] [t]here are instances when that need will outweigh the countervailing policy.' (. . . *Proct[e]r & Gamble, supra*, 356 U.S. 677, 682 . . . .)" (*Shepherd, supra*, 17 Cal.3d at p. 127.)

In *People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403 [92 Cal.Rptr.2d 829], the court held that, despite the lack of an express statutory provision, the capacity of defendants to reasonably set aside their indictments pursuant to section 995 would be undermined if such defendants were forbidden to discover nontestimonial grand jury materials, including oral and written advisements given the grand jury by the district attorney. (78

Cal.App.4th at pp. 435–436.) The court recognized a rule permitting defendants access to grand jury discovery material "necessary to . . . bring a section 995 motion to set aside [their] indictment." (*Id.* at p. 436.) The majority in the present case correctly recognize that this case serves as an example of an absolute necessity exception that "could operate without eroding the interests served by grand jury secrecy." (Maj. opn., *ante*, at p. 232, fn. 11.)

The recognition of a common law "absolute" or "compelling" necessity exception to the grand jury secrecy rule is consistent with the development of the law in other jurisdictions. For example, in *State v. Hartfield* (1981) 290 Ore. 583 [624 P.2d 588], the Oregon Supreme Court considered whether a defendant could obtain a tape recording of the state's chief witness given to the grand jury that had indicted the defendant. The trial court had refused such access, finding no statutory authorization for such a disclosure. The Supreme Court reversed. It noted that there were two statutory exceptions to grand jury secrecy under the relevant statute, Oregon Revised Statutes section 132.220, which provides: "A member of a grand jury may be required by any court to disclose: [¶] (1) The testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court. [¶] (2) The testimony given before such grand jury by any person, upon a charge against such person for perjury or false swearing or upon his trial therefor." Although neither of these provisions was construed to assist the defendant, the court allowed discovery of the tape recording under a nonstatutory judicial exception of long standing, in which such material is discoverable " 'when permitted by the court in the furtherance of justice.' " (*Hartfield, supra*, 624 P.2d at p. 590.) The court quoted from a venerable treatise, 1 Bishop on Criminal Procedure (2d ed. 1872) section 859: " '[W]hen the reasons for keeping the testimony private have passed away, the obligation of secrecy would seem to have ended also. Yet when, in addition to this, the claims of public justice must go unsatisfied unless the disclosure is made, the same reason which originally required secrecy requires that the secret be no longer kept.' " (*Hartfield, supra*, 624 P.2d at p. 591, italics omitted.) It appears that most jurisdictions have likewise adopted some sort of furtherance of justice exception to the grand jury secrecy rule.[2]

---

[2] In some cases, as in *Hartfield*, this has been done by common law, sometimes supplementing the statutory framework for grand jury secrecy. (See, e.g., *Millican v. State* (Ala.Crim.App. 1982) 423 So.2d 268, 270 [adopting a common law rule allowing grand jury discovery for impeachment purposes]; *Keen v. State* (Fla. 1994) 639 So.2d 597; *Euresti v. Valdez* (Tex.Civ.App. 1989) 769 S.W.2d 575, 578–579 [grand jury testimony is not absolutely privileged against discovery in a civil suit and may be obtained on a showing of particularized need]; *State v. Higgins* (La. 2005) 898 So.2d 1219, 1241 [common law exception to statutory rule]; *Sutton v. State* (Ct.Spec.App. 1975) 25 Md.App. 309 [334 A.2d 126, 129] [recognizing a common law rule similar to federal rule]; *Mannon v. Frick* (1956) 365 Mo. 1203 [295 S.W.2d 158, 163–165] [recognizing an exception to grand jury secrecy in civil lawsuit beyond what is explicitly

Thus, the absolute or compelling necessity exception has been invoked both in the context of criminal indictments, as in *Sontag*, and civil lawsuits and discovery, as in *Shepherd*. Given the existence of a common law compelling necessity exception not strictly based on statute, the question is, what must a civil litigant show in order to qualify for that exception? What a compelling necessity is *not*, and therefore impliedly what it is, was suggested by the United States Supreme Court in *Procter & Gamble*. There, a grand jury had refused to return a criminal antitrust indictment against the defendants. The government filed a civil suit against the defendants and the defendants sought the grand jury transcripts the government was relying on to prepare its civil case. (*Procter & Gamble, supra*, 356 U.S. at pp. 678–679.) The high court held the district court had abused its discretion in granting wholesale access to grand jury transcripts. After reciting the reasons for maintaining grand jury secrecy, the court stated: "This 'indispensable secrecy of grand jury proceedings,' [citation] must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity. [¶] No such showing was made here. The relevancy and usefulness of the testimony sought were, of course, sufficiently established. If the grand jury transcript were made available, discovery through depositions, which might involve delay and substantial costs, would be avoided. Yet these showings fall short of proof that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done." (*Procter & Gamble, supra*, 356 U.S. at p. 682.)

Moreover, the notion of absolute necessity implies a necessity so compelling that it outweighs the strong countervailing interests in grand jury secrecy. This principle is elucidated in *Douglas Oil Co. v. Petrol Stops Northwest* (1979) 441 U.S. 211, 220 [60 L.Ed.2d 156, 99 S.Ct. 1667] (*Douglas Oil*), which interpreted a former version of rule 6(e) of the Federal Rules of Criminal Procedure (18 U.S.C.), providing that disclosure of grand jury transcripts may be made " 'when so directed by a court preliminarily to or in connection with a judicial proceeding.' " The court concluded that the one seeking disclosure must show, inter alia, "that the need for disclosure is

provided by statute]; *State v. Doliner* (1984) 96 N.J. 236 [475 A.2d 552, 557–558] [common law exception recognized similar to federal court rule notwithstanding the lack of a similar state court rule]; *State v. Carillo* (1973) 112 R.I. 6 [307 A.2d 773, 777] [recognizing a rule similar to the federal rule in criminal cases based on due process].) Other jurisdictions have adopted by court rule or statute an interest of justice exception to the secrecy rule. (See *State v. Superior Court in and for County of Maricopa* (1964) 95 Ariz. 319 [390 P.2d 109, 119]; *In re Jessup's Petition* (Super.Ct. 1957) 50 Del. 530 [11 Terry 530, 136 A.2d 207, 219]; *Diamen v. U.S.* (D.C. 1999) 725 A.2d 501, 532; *Hinojosa v. State* (Ind. 2003) 781 N.E.2d 677, 681; *In re Grand Jury of Douglas Cty.* (2002) 263 Neb. 981 [644 N.W.2d 858, 863]; *People v. Di Napoli* (1970) 27 N.Y.2d 229, 238 [316 N.Y.S.2d 622, 265 N.E.2d 449]; *State v. Greer* (1981) 66 Ohio St.2d 139 [420 N.E.2d 982, 989].)

greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed." (*Douglas Oil, supra,* at p. 222.) The court made clear that "[s]uch a showing must be made even when the grand jury whose transcripts are sought has concluded its operations . . . . For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." (*Ibid.*)

Although the compelling necessity test suggested by the California case law discussed above is more stringent than the test adopted in *Douglas Oil,* that case is instructive in the present context. Even if a plaintiff in a civil case were to show a strong need for grand jury materials, and that disclosure of such materials would be in the furtherance of justice, the plaintiff's discovery request could not be granted if to do so would undermine the reasons for grand jury secrecy recited in the case law and strongly implicit in the state's legislation regarding grand juries. Moreover, this need for secrecy is substantial not only when the grand jury is performing its criminal indictment function but also when, as in this case, it performs its investigatory function. "Compared with indictment proceedings, the efficacy and credibility of watchdog investigations no less require that witnesses testify without fear of reproach by their peers or their superiors. Though the watchdog investigation and report serve a different social purpose than the criminal indictment, eliciting candid testimony is obviously critical to both functions of the grand jury." (*McClatchy, supra,* 44 Cal.3d at p. 1175.)

In light of the above, in cases in which a civil plaintiff seeks transcripts of a grand jury investigation, in my view the litigant must show (1) that the information sought is necessary to prosecute his or her claim; (2) that the information cannot reasonably be obtained through the usual means of civil discovery short of resorting to grand jury materials—"mere inconvenience or difficulty of proving the fact" is not sufficient (*Sontag, supra,* 64 Cal. at p. 528); (3) that granting the request will not undermine the essential functions of grand jury secrecy, including that of ensuring that the disclosures will not chill the testimony of future grand jury witnesses; (4) that the request is narrowly tailored to accomplish these ends. Although the above test is stricter than under federal law (see *Douglas Oil, supra,* 441 U.S. at p. 222) and the law of many state jurisdictions, anything less would appear to be inconsistent with the strong policy of grand jury secrecy that finds its expression in our statutes.

In the present case, as the majority note, Goldstein has not articulated, and the Court of Appeal did not rely on, an absolute necessity standard. Whether he can do so on remand remains to be seen.[3]

---

[3] The majority state: "Neither the Court of Appeal nor Goldstein, in his briefing here, relied on the *Sontag* court's mention of absolute necessity, and for obvious reasons. The Court of Appeal did not restrict its rule permitting disclosure of grand jury materials to instances of absolute necessity. Goldstein, as the grand jury points out, has the grand jury report and was able to secure his release on habeas corpus without the evidentiary materials he is seeking for use in his civil rights lawsuit. Thus, it is apparent that his position is not one of necessity, but of 'mere inconvenience or difficulty of proving the fact[s]' needed to make his civil case in federal court. (*Sontag, supra,* 64 Cal. at p. 528.)" (Maj. opn., *ante,* at pp. 231–232.) It is of course true that access to the grand jury materials was not necessary to secure his release in his habeas corpus proceeding. Whether there is an absolute or compelling necessity for access to such materials in order for Goldstein to pursue his *civil* case is, of course, a different matter and, as indicated above, one that has not been addressed by the parties. I do not understand the majority position to be that absolute necessity can never arise in the context of a civil case, or that it has been clearly established in the present case that there is no such necessity.