TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 22-701 |
| of | : | |
| | : | August 24, 2023 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

The HONORABLE JEFF W. REISIG, DISTRICT ATTORNEY OF YOLO COUNTY, has requested an opinion on questions relating to grand juries.

**QUESTIONS PRESENTED AND CONCLUSIONS**

1. Does Penal Code section 904.6 require a court to impanel a grand jury upon a district attorney's request?

No. Penal Code section 904.6 provides that a court *may* impanel a grand jury upon a district attorney's request, but does not require it.

2. Do prosecutors' disclosure obligations under *Brady v. Maryland* (1963) 373 U.S. 83 and Penal Code section 1054.1 encompass materials from criminal grand jury proceedings, despite the fact that those proceedings are conducted in secret?

Yes. Prosecutors' disclosure obligations under *Brady* and Penal Code section 1054.1 encompass materials from criminal grand jury proceedings, despite the fact that those proceedings are conducted in secret.

1

# INTRODUCTION AND BACKGROUND

The questions before us primarily relate to the function of a grand jury in determining whether probable cause exists to indict a criminal defendant for trial.[1] This occurs when a prosecutor seeks an indictment by grand jury, in secret and outside of the defendant's presence, rather than proceeding by preliminary hearing.[2] A second grand jury function is to assess alleged misconduct by local officials and make a formal accusation to remove them from office.[3] The third grand jury function is to investigate and report on local government as a civil "watchdog."[4] Although grand jury indictments and reports may eventually be disclosed, the grand jury operates in secret.[5]

The California Constitution and the Penal Code provide that at least one grand jury shall be drawn and impaneled in each year in each county.[6] Penal Code section 904.6 provides that the court may impanel an additional grand jury upon the request of the Attorney General or the district attorney or upon the court's own motion.[7] When a second grand jury is formed under section 904.6, this grand jury—instead of the pre-existing "regular" grand jury—handles all new criminal matters, and only criminal matters.[8] We will refer to this second grand jury as a "section 904.6 grand jury" or "criminal grand jury."

A section 904.6 grand jury must be randomly selected from sources "reasonably representative of a cross section of the population which is eligible for jury service in the

---

[1] See Pen. Code, § 917; *McGill v. Superior Court* (2011) 195 Cal.App.4th 1454, 1467-1470.

[2] *McGill v. Superior Court, supra*, 195 Cal.App.4th at pp. 1467-1470; *Williams v. Superior Court* (2019) 38 Cal.App.5th 1022, 1028-1029.

[3] *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1170; Pen. Code, § 922.

[4] *McClatchy Newspapers v. Superior Court, supra*, 44 Cal.3d at p. 1170; Pen. Code, §§ 919, 925 et seq.

[5] *People v. Garcia* (2011) 52 Cal.4th 706, 729-730; see, e.g., Pen. Code, §§ 911, 915, 924.2, 924.6, 929-930, 938-938.1, 939; but see *id*., § 939.1 (limited public sessions).

[6] Cal. Const., art. I, § 23; Pen. Code, § 905.

[7] All further statutory references in the text are to the Penal Code. Other statutes authorize an additional grand jury, but those are not before us. (See, e.g., Pen. Code, §§ 904.4 [in county of specific size], 904.7 [in San Bernardino], 904.8 [two in Los Angeles].)

[8] See 76 Ops.Cal.Atty.Gen. 181, 187 (1993); Pen. Code, § 904.6, subd. (d).

22-701

county"—specifically, from the jury pool for civil and criminal cases.[9]  In contrast, the regular grand jury is generally selected by superior court judges.[10]  Regardless of the type of grand jury, the accused is constitutionally entitled to a grand jury drawn from a representative cross-section of the community.[11]

In this opinion we consider (1) whether section 904.6 requires a court to impanel a criminal grand jury whenever a district attorney requests one, and (2) whether evidence required to be disclosed under *Brady* or under section 1054.1 may include materials from criminal grand jury proceedings despite the fact that such proceedings are conducted in secret.

## ANALYSIS

### 1.  Section 904.6(a) Does Not Require the Court to Impanel a Grand Jury upon a District Attorney's Request

We are first asked whether section 904.6 requires a court to impanel a criminal grand jury upon the district attorney's request.  We conclude that it does not because the statutory language, context, and history reveal that the Legislature intended for courts to have discretion regarding whether to impanel a criminal grand jury.

#### *Statutory Language and Context*

As the California Supreme Court has explained, the fundamental task in statutory interpretation "is to determine the Legislature's intent so as to effectuate the law's purpose," by examining the statutory language and "giving it a plain and commonsense meaning."[12]  The statutory language should be examined "in the context of the entire statute and the statutory scheme," and in a manner that gives "significance to every word, phrase, sentence, and part of an act."[13]

Section 904.6(a) provides that a judge "may" impanel a second grand jury upon request or upon the judge's own motion, as follows:

---

[9] Penal Code, § 904.6, subds. (b), (e).

[10] *People v. Garcia*, *supra*, 52 Cal.4th at p. 730 (Legislature vested superior court with responsibility for selecting grand jurors); Pen. Code, § 896 et seq. (selection procedures).

[11] *People v. Burney* (2009) 47 Cal.4th 203, 225.

[12] *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673.

[13] *Ibid*.

3

In any county or city and county, the presiding judge of the superior court, or the judge appointed by the presiding judge to supervise the grand jury, may, upon the request of the Attorney General or the district attorney or upon his or her own motion, order and direct the impanelment, of one additional grand jury pursuant to this section.[14]

To determine whether this language requires a grand jury to be impaneled upon a district attorney's request, we begin by examining whether the word "may" as used here is mandatory or discretionary.

As the California Supreme Court has explained, "judicial authorities have construed 'may' as both discretionary and mandatory" depending on the statutory context in which the word is used.[15] To be sure, it is "well-settled . . . that the word 'may' is ordinarily construed as permissive."[16] But when "may" is considered in isolation, "it is impossible to conclude with sufficient certainty what the Legislature intended," so there must be a "focus more broadly on the language, context, and history of the statute."[17]

We begin that inquiry here by focusing on the language of section 904.6(a). The word "may" prefaces the reference to a district attorney's "request." Like "may," the term "request" generally connotes discretion: a "request" refers to something that may either be granted or denied. Taken together, the language that a court "may" impanel a criminal grand jury upon "request" weighs in favor of reading the statute to mean that the court retains discretion over whether to grant the request. In addition, the statute provides that the judge "may" impanel a grand jury "upon his or her own motion," establishing that the court has discretion to impanel a grand jury whether or not the district attorney makes a request.

Turning to section 904.6 as a whole, it is noteworthy that the Legislature used both "may" and "shall" in this section. Although "shall" does not appear in subdivision (a), it appears three times in subdivision (b), once in subdivision (c), once in subdivision (d), and twice in subdivision (e). These subdivisions address grand jury selection procedures, length of service, jurisdiction, and legislative intent for grand jury selection, respectively.

---

[14] Pen. Code, § 904.6, subd. (a).

[15] *People v. Ledesma* (1997) 16 Cal.4th 90, 95.

[16] *Andrews v. Metropolitan Transit System* (2022) 74 Cal.App.5th 597, 605; see also *Halo Electronics, Inc. v. Pulse Electronics, Inc*. (2016) 579 U.S. 93, 103, citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (observing that the "word 'may' clearly connotes discretion").

[17] *People v. Ledesma*, *supra*, 16 Cal.4th at p. 95.

Apart from the single occurrence of "may" in subdivision (a), the word "may" appears in the statute three other times—twice in subdivision (c) and once in subdivision (d).

This combined use of "may" and "shall" in section 904.6 weighs in favor of reading "may" as discretionary. As the California Supreme Court has explained, "[w]hen the Legislature has, as here, used both 'shall' and 'may' in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively."[18] Because "shall" appears throughout section 904.6—but not in subdivision (a)—"we may fairly infer the Legislature intended" the word "may" as used in subdivision (a) to have a discretionary meaning.[19]

Moreover, the word "shall," with its apparent mandatory meaning, also appears in a nearby statute on grand jury impanelment. Specifically, section 913 provides that a grand jury "shall" be impaneled upon "demand" by the Attorney General. In apparent furtherance of the requirement for at least one grand jury in each county, that statute provides that "[i]f a grand jury is not in existence, the Attorney General may *demand* the impaneling of a grand jury by those charged with the duty to do so, and upon such *demand* by him, it *shall* be their duty to do so."[20] The Legislature could have easily used similar mandatory language in section 904.6(a), but did not.[21]

Another neighboring statutory provision regarding grand jury impanelment also supports a discretionary reading of section 904.6(a). Section 904 provides that a court has discretion when to impanel a grand jury, stating that "[e]very superior court, whenever in its opinion the public interest so requires, shall make and file with the jury commissioner an order directing a grand jury to be drawn."[22] Section 904 has been consistently interpreted over the years as giving a court discretion to decide when to

---

[18] *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542; see also *Andrews v. Metropolitan Transit System*, *supra*, 74 Cal.App.5th at p. 605 ("It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute.").

[19] See *Tarrant Bell Property, LLC v. Superior Court*, *supra*, 51 Cal.4th at p. 542.

[20] Pen. Code, § 913, italics added; see Cal. Const., art. I, § 23; Pen. Code, § 905.

[21] See *Paul Blanco's Good Car Company Auto Group v. Superior Court* (2020) 56 Cal.App.5th 86, 113 ("[I]f the Legislature had intended" something to be a requirement "it easily could have said so").

[22] Pen. Code, § 904. We note that this statute is not mandatory despite containing the word "shall," because the command applies only after the court has made a discretionary finding ("whenever in its opinion . . .").

22-701

impanel an additional grand jury under section 904.6. During a previous era when grand jury statutes including section 904.6 provided for criminal grand juries in specified counties only, the California Supreme Court explained that "the court determines when a grand jury should be empaneled," citing section 904, alongside statutes providing for a criminal grand jury such as section 904.6.[23] During that same era, an Attorney General opinion similarly recognized that section 904 gives the court discretion to determine whether to impanel an additional grand jury.[24] And once the Legislature extended section 904.6 to apply in every county, a legislative committee report summarized and cited section 904 in explaining laws relevant to section 904.6.[25]

If the Legislature had intended section 904.6(a) to override the established discretion of a court, we believe that intent would have been expressed in a more straightforward way, such as by using the word "shall."[26] But the Legislature did not use any such language. Indeed, as discussed below, section 904.6(a)'s legislative history reveals that the Legislature actively considered—but then expressly rejected—the use of "shall" in this provision.

The requestor advances a markedly different interpretation of section 904.6(a). He suggests that the statute confers discretion on the court to impanel a criminal grand jury on its own motion, but imposes a mandatory obligation on the court to impanel a criminal grand jury if a district attorney requests one.[27] On that reading, section 904.6(a)'s single use of the word "may" denotes two different and opposing meanings—mandatory if the district attorney requests the grand jury; discretionary if the judge impanels the grand jury on the judge's own motion. We are not persuaded. We do not normally attribute different meanings to the same word in the same statutory sentence. The requester does not identify any authority supporting the proposition that the single use of the word "may" in section 904.6(a) would allow the word to simultaneously carry two different

---

[23] *People v. Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 438, fn. 8.

[24] 72 Ops.Cal.Atty.Gen. 128, 131-134 (1989) (construing legislative history of section 904 to expand court discretion from what time of year to impanel to "whether and when the public interest required the impaneling of more than one grand jury for the year").

[25] Assem. Comm. on Public Safety Analysis, Sen. Bill No. 416, as amended March 29, 2005, pp. 1-2.

[26] See *First Street Plaza Partners v. City of Los Angeles* (1998) 65 Cal.App.4th 650, 663 (specified action "plainly mandate[d]" by using "classic mandatory verb 'shall'").

[27] Yolo County District Attorney Jeff W. Reisig, letter to Senior Assistant Attorney General Mollie Lee, July 14, 2022, p. 1 ("Requestor letter") p. 4, fn. 13; accord, Riverside County District Attorney Michael Hestrin, letter to Deputy Attorney General Catherine Bidart, Oct. 17, 2022, p. 2 ("Riverside letter").

and opposing meanings.[28] And the other textual and contextual cues discussed above all point in a different direction.

### *Legislative History*

The Legislature enacted section 904.6(a) in 1972, then amended it in 1991 and again in 2005 to read as it does today. Since its first enactment, the statute has provided that a judge "may" impanel an additional grand jury.[29] The statute first applied in San Francisco only, but the Legislature expanded it in 1991 to apply in all counties, due to an anticipation that more prosecutors would use grand juries after an initiative eliminated a requirement for a post-indictment preliminary hearing.[30] In 2005, the Legislature amended the statute to read as it does today.[31] The 2005 amendments added the language before us that refers to a district attorney's request to impanel a 904.6 grand jury.[32]

In 2005, the bill initially considered by the Legislature would have replaced the word "may" and directed that a judge "shall" impanel a criminal grand jury upon a district attorney's request.[33] Ultimately, however, the Legislature rejected the proposed change to "shall," leaving "may" intact. That history is powerful evidence that the word "may" in the current statute should not be read to mean "shall" or "must." As the Court of Appeal has explained, "[t]he Legislature's rejection of a specific provision which

---

[28] Cf. *Reno v. Bossier Parish School Bd.* (2000) 528 U.S. 320, 329 (rejecting "a construction that would attribute different meanings to the same phrase in the same sentence, depending on which object it is modifying"); *Paul Blanco's Good Car Company Auto Group v. Superior Court*, *supra*, 56 Cal.App.5th at p. 107 (in limited circumstances, multiple meanings could apply to same word used *in different places* of statute).

[29] Former Pen. Code, § 904.6, subd. (a), as enacted by Stats. 1972, ch. 896, § 1 ("In any city and county, the presiding judge of the superior court may order and direct the impanelment, at any time, of one additional grand jury pursuant to this section").

[30] Compare *ibid.* with Stats. 1991, ch. 464, § 2 ("In any county or city and county, the presiding judge of the superior court may order and direct the impanelment, at any time, of one additional grand jury pursuant to this section"); see Cal. Const., art. I, § 14.1, added by Prop. 115, June 5, 1990; Governor's Office of Planning and Research, Enrolled Bill Rep. on Assem. Bill No. 607 (1991-1992 Reg. Sess.), Sept. 26, 1991, p. 3; see also note 42, *infra* (enrolled bill report as legislative history).

[31] Stats. 2005, ch. 25, § 1.

[32] Compare Pen. Code, § 904.6(a) with former Pen. Code, § 904.6(a), as enacted by Stats. 1991, ch. 464, § 2; see note 31, *ante*.

[33] Sen. Bill No. 416 (Reg. Sess. 2005-2006) as introduced Feb. 17, 2005.

appeared in the original version of an act supports the conclusion that the act should not be construed to include the omitted provision,"[34] and "[t]he deletion of a specific provision contained in legislation as originally introduced is most persuasive that the enactment should not be interpreted to include what was omitted."[35]

Moreover, we presume that, when the Legislature left "may" intact, it was aware of existing opinions interpreting that term as discretionary.[36] Indeed, multiple sources support the inference that the Legislature knew that existing law gave the judge discretion over whether to impanel a criminal grand jury—and that the continued use of "may" in the statute would preserve that state of affairs.

We begin with the Legislative Counsel's Digest.[37] The Digest explained that the proposed change from "may" to "shall" in 2005 would change an existing authorization to a requirement:

> Existing law authorizes the presiding judge of the superior court in any county or city and county to empanel an additional grand jury, as specified.
>
> This bill would instead require the presiding judge or the judge appointed by the presiding judge to supervise the grand jury to empanel an additional grand jury upon the request of the Attorney General or the District Attorney.
>
> By imposing additional burdens on local governments in connection with the grand jury, this bill would impose a state-mandated local program.[38]

---

[34] *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 256.

[35] *Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 99.

[36] *People v. Tingcungco*, *supra*, 237 Cal.App.4th at p. 257 (rejection of provision from earlier bill version has "extra significance" when viewed with "another rule of statutory construction: The Legislature is deemed to be aware of judicial decisions already in existence and to have enacted or amended a statute in light of those decisions"); *Burden v. Snowden* (1992) 2 Cal.4th 556, 564 (Legislature presumed to know Attorney General opinions affecting subject matter of proposed legislation); see notes 23 & 24, *ante*.

[37] See *Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1154-1155 (Legislative Counsel's Digest prefaces each bill to assist Legislature and is entitled to great weight in determining legislative intent).

[38] Legis. Counsel's Dig., Sen. Bill No. 416 (2005-2006 Reg. Sess.), as introduced.

When "shall" was rejected and changed back to "may," the Digest explained that this removed the requirement, and no longer imposed a state-mandated local program.[39] The Court of Appeal has described a similar situation—when the text of a bill changed from "shall" to "may," and the Digest changed its description of the bill from "require" to "authorize"—as demonstrating "with reasonable certainty that, although the bill as originally proposed would have created a mandatory duty . . . , the bill as amended provided only for discretionary" action.[40] Here too, the Legislature's rejection of "shall," coupled with the interpretive statements contained in the Legislative Counsel's Digest, provide reasonable certainty that the Legislature intended the statute to be discretionary.

Other sources from 2005 provide further evidence of that legislative intent. A legislative committee analysis describing the bill (after "may" had been restored) explained that existing law authorized judges to impanel an additional grand jury, and that the bill "*[p]ermits* a judge . . . upon the request of the . . . district attorney, or his or her own motion, to impanel an additional grand jury."[41] And an enrolled bill report explained that the bill "would let a district attorney *ask* for a second grand jury," would "allow" district attorneys to request an additional grand jury, and would "grant . . . authority" to a district attorney to request a second grand jury.[42]

Based on the above, the text of section 904.6(a) and its history lead us to conclude that judges retain discretion to decide whether to impanel a criminal grand jury in response to a request from a district attorney. We address opposing views below.

---

[39] Legis. Counsel's Dig., Sen. Bill No. 416 (2005-2006 Reg. Sess.), as amended March 29, 2005 (stating "[t]his bill would instead require *provide that* the presiding judge or the judge appointed by the presiding judge to supervise the grand jury to *may* empanel an additional grand jury upon the request of the Attorney General or the District Attorney," italics and strike-out text in original, and removing language on state-mandated local program).

[40] *Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 434-436.

[41] Sen. Assem. Com. on Public Safety Analysis, Rep. on Sen. Bill No. 416 (2005-2006 Reg. Sess.), as amended March 29, 2005, p. 1, italics added; see *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1401 ("In construing a statute, legislative committee reports, bill reports, and other legislative records are appropriate sources from which legislative intent may be ascertained").

[42] Governor's Office of Planning and Research, Enrolled Bill Rep. on Sen. Bill No. 416 (2005-2006 Reg. Sess.), June 20, 2005, pp. 1-2, italics added; see *UFCW & Employers Benefit Trust v. Sutter Health* (2015) 241 Cal.App.4th 909, 926, fn. 12 (enrolled bill report as legislative history).

9

*Other Views*

Our view, while shared by some district attorneys, as seen in a court filing and a legislative committee report, conflicts with the views of other district attorneys, such as the requestor and the Riverside County District Attorney.[43] Those who favor a mandatory interpretation contend that "nothing in the statutory language" or "in the legislative history" suggests that a district attorney's request for "a 904.6 criminal grand jury is conditioned on the Court's discretion."[44] But this overlooks the strong textual and historical evidence of legislative intent discussed above.[45]

The requestor asserts that the Legislature has expressed a preference for section 904.6 grand juries to be used in criminal matters.[46] But there is reason to doubt that characterization: For example, the Legislature rejected providing a proposed further additional criminal grand jury in San Diego County, but approved providing an additional *civil* grand jury in San Bernardino County.[47] A legislative committee analysis stated that the civil grand jury bill did not have the "same faults" as the rejected bill. The analysis explained that "[c]riminal grand juries are designed for use in exceptional cases, with most criminal cases being processed through preliminary hearings," and cited concerns

---

[43] See, e.g., Appellant's Reply Brief in *City of Woodlake, et al. v. Tulare County Grand Jury*, 2011 WL 1248736 (Cal.App. 5 Dist.), pp. 1-2 (Tulare County District Attorney explaining that "nothing requires a court" to impanel second grand jury upon request under section 904.6(a)); Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1854 (2007-2008 Reg. Sess.), April 8, 2008, p. 11 (quoting then San Diego District Attorney, regarding language mirroring section 904.6(a), that it "will allow" court to impanel "at its discretion," and upon district attorney's request "but at the discretion o[f] the Court and only with its authorization"); cf. Requestor letter, *supra*, p. 4, fn. 13; Riverside letter, *supra*, pp. 2-4.

[44] Requestor letter, *supra*, p. 10.

[45] We do not address letters cited by the requestor that are not cognizable legislative history. (See Requestor letter, *supra*, p. 6, fn. 16; *id*. at p. 8, fn. 20; *K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 740.)

[46] Requestor letter, *supra*, p. 9, fn. 21.

[47] See Penal Code, § 904.7, enacted by Stats. 2010, ch. 87, § 1 (Assem. Bill No. 1906); Sen. Judiciary Com., Analysis of Assem. Bill No. 1906 (2009-2010 Reg. Sess.), as amended April 6, 2010, hearing date June 15, 2010, p. 5 (discussing rejected San Diego bill); see also Assem. Bill No. 1854 (2007-2008 Reg. Sess.), as introduced (rejected San Diego bill).

10

that "defendants are not allowed to attend the grand jury and are therefore unable to confront witnesses or challenge evidence."[48]

The requester also invokes language from the California Constitution, stating that "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information."[49]  Because the Constitution describes the authority of prosecutors to choose whether to proceed by indictment or information, the requester appears to reason that section 904.6(a) must be understood as creating a mandatory obligation for judges to impanel a section 904.6 grand jury when a prosecutor requests one.[50]  That does not follow:  The option of proceeding by indictment simply does not confer a right to a section 904.6 grand jury instead of a regular grand jury.

In addition, the requestor asserts that construing the statute as discretionary "would result in an absurd consequence" of "compelled use of a [regular] grand jury that would not give county citizens an equal opportunity to serve" and that is "less representative and diverse."[51]  In a similar vein, the requestor asserts that the Legislature made section 904.6 apply in each county due to "concern about possible legal challenges to indictments" returned by regular grand juries, and thus intended that a section 904.6 grand jury would necessarily be impaneled upon request.[52]

We disagree that a discretionary reading would result in any absurd consequences. Any concern regarding the selection and representativeness of a particular regular grand jury considering charges for an indictment may be raised in a request for a section 904.6 grand jury.  Moreover, judges surely consider constitutional standards regarding selection

---

[48] Sen. Judiciary Com., Analysis of Assem. Bill No. 1906 (2009-2010 Reg. Sess.), as amended April 6, 2010, hearing date June 15, 2010, p. 5.

[49] Cal. Const., art. I, § 14.

[50] Requestor letter, *supra*, pp. 1, 7-11, fn. 23.

[51] *Id*. at p. 9.

[52] *Id*. at p. 8 & fn. 20, citing, e.g., 76 Ops.Cal.Atty.Gen. 181, *supra*; Sen. Com. on Judiciary, Analysis of Assem. Bill 607, July 16, 1991 (purpose of 1991 amendments to section 904.6 was to permit counties to establish additional grand juries to handle criminal indictments as authorized by Proposition 115 without post-indictment preliminary hearings, composed to preclude challenge for unrepresentative panel) & Senate Com. on Judiciary, Analysis of Assem. Bill No. 607, August 27, 1991 (criminal grand juries may afford court opportunity to select panel more representative of general population, immunizing future challenge and reducing risk of successful appeal); see also Requestor letter, *supra*, pp. 5-7.

and representation both when impaneling regular grand juries and when determining whether it would serve the public's interest to impanel a section 904.6 grand jury.[53]

We also disagree with the requestor's contention that the Legislature's decision to expand section 904.6 to all counties compels a mandatory interpretation. When the Legislature enacted this expansion in 1991, it did not reference the provision authorizing a district attorney to request a criminal grand jury. Nor could it have, since that provision did not appear in the statute until 2005. It would defy the statute's chronology to interpret the 1991 expansion as conveying an intent for a request provision added fourteen years later to create a mandatory obligation for judges to impanel a criminal grand jury. We acknowledge that an earlier and un-enacted version of the 1991 expansion bill included language referencing a district attorney's request for a criminal grand jury. In doing so, however, that bill used language consistent with a discretionary reading, stating that "the presiding judge of the superior court *shall have the power* to impanel a criminal grand jury *whenever the public interest so requires* or when requested to do so by the district attorney . . . ."[54] If enacted, that language would have simply reflected long-standing judicial discretion regarding whether to impanel a grand jury, which, as set forth in section 904, is appropriate "whenever in [the court's] opinion the public interest so requires."

The requestor also raises a concern that, if a section 904.6 grand jury were not available whenever a prosecutor demanded one, prosecutors might "monopolize" the regular grand jury, thereby interfering with its civil work as a watchdog.[55] We believe that the Legislature intended to address this concern by authorizing the impanelment of a second grand jury—the criminal grand jury—in each county. As mentioned above, the Legislature made the criminal grand jury under section 904.6 available in each county, in anticipation that more prosecutors would proceed by grand jury instead of by preliminary hearing, since the post-indictment requirement to hold a preliminary hearing anyway had

---

[53] See Pen. Code, § 904; *People v. Burney*, *supra*, 47 Cal.4th at p. 225 (constitutional entitlement to "jury drawn from a representative cross-section of the community" requires that "pools from which juries are drawn must not systematically exclude distinctive groups in the community"); see, e.g., *People v. Garcia*, *supra*, 52 Cal.4th at p. 739 (inferring from regular grand jury form that "Los Angeles Superior Court was evidently aware of its constitutional duties in selecting grand jurors").

[54] See Assem. Bill No. 607, proposing Penal Code section 902.5 (as amended April 18, 1991), emphasis added.

[55] As support, the requestor cites a prior Attorney General opinion, which concluded that the grand jury could not limit the prosecution's appearance time to ten days per month. (See Requestor letter, *supra*, p. 8; 76 Ops.Cal.Atty.Gen. 181, *supra*.)

been eliminated.[56] Rather than require judges to impanel a second grand jury every time a prosecutor requested one, however, the Legislature expected that judges would consider the regular grand jury's workload and other relevant considerations before deciding whether it would serve the public interest to impanel a criminal grand jury. That discretionary understanding of the statute allows judges to consider and address the policy concern raised by the requestor.

Lastly, we consider the requestor's argument that the statute must create a mandatory obligation for judges to impanel a criminal grand jury in response to a district attorney's request because otherwise the reference to such a request would be "superfluous in that it would be the Court's sole decision regardless."[57] We cannot agree. The legislative history reveals that the references to the district attorney's request and the court's own motion were enacted together, and a committee report indicates that the latter reference was included "to preserve the superior court's ability under current law to empanel an additional grand jury if the court deems it necessary."[58] The Legislature plainly intended that courts would have discretion to grant a district attorney's request for a criminal grand jury, where appropriate, and that courts would *also* have discretion to impanel a criminal grand jury on their own motion, even if the district attorney does not request one. There is no surplusage.

### 2. *Brady* and Penal Code Section 1054.1 Do Not Exempt from Disclosure Materials from Grand Jury Proceedings Considering Criminal Charges

The second question refers to both a criminal defendant's federal constitutional right to the disclosure of certain exculpatory evidence under *Brady v. Maryland* (1963) 373 U.S. 83, and the defendant's statutory right to evidentiary disclosures, as set forth in Penal Code section 1054.1, a provision within California's criminal discovery statute.[59] We are asked whether the disclosures required by *Brady* and section 1054.1 may include materials from criminal grand jury proceedings, or whether such materials are excluded from disclosure on the theory that such proceedings are held in secret. We agree with the requestor that neither *Brady* nor section 1054.1 provides an exception that would allow for those materials to be withheld from the defendant.[60]

---

[56] See note 30 and accompanying text, *ante*.

[57] Requestor letter, *supra*, p. 10.

[58] Sen. Judiciary Com., Analysis of Sen. Bill No. 416 (2005-2006 Reg. Sess.), as amended March 29, 2005, pp. 2-3; see Stats. 2005, ch. 25, § 1.

[59] See *Brady v. Maryland* (1963) 373 U.S. 83, 87; Pen. Code, § 1054.1.

[60] Requestor letter, *supra*, pp. 1, 11, 15.

### *Legal Background*

We begin by reviewing the relevant legal principles. To protect a criminal defendant's federal constitutional right to a fair trial, the United States Supreme Court held in *Brady v. Maryland* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[61] In subsequent cases, the Court elaborated on that rule. For example, it held that favorable evidence includes both exculpatory and impeachment evidence, and that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[62] The Court further determined that prosecutors must voluntarily provide *Brady* evidence, even if the defendant has not requested it.[63]

Penal Code section 1054.1 is a California criminal discovery statute that lists materials and information that the prosecuting attorney "shall disclose" to a criminal defendant before trial.[64] The statute lists the names and addresses of intended prosecution witnesses, statements of all defendants, all relevant evidence from the investigation of the charged offenses, felony convictions of material witnesses whose credibility will likely be critical to the trial outcome, any exculpatory evidence, and relevant witness statements (and related items such as reports and examinations) that the prosecution intends to offer at trial.[65]

The requirements under *Brady* and its progeny are distinct from those under section 1054.1.[66] For example, section 1054.1 "requires the prosecution to provide all exculpatory evidence, not just evidence that is material under *Brady* and its progeny."[67] And as the California Supreme Court has explained, *Brady* due process requirements operate independently from discovery statutes such as section 1054.1.[68] "No statute can

---

[61] *Brady v. Maryland, supra,* 373 U.S. at p. 87.

[62] *United States v. Bagley* (1985) 473 U.S. 667, 676-677, 682.

[63] *United States v. Agurs* (1976) 427 U.S. 97, 106-107, 110.

[64] *People v. Washington* (2019) 34 Cal.App.5th 311, 317, quoting Pen. Code, § 1054.1.

[65] Pen. Code, § 1054.1.

[66] *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378.

[67] *People v. Cordova* (2015) 62 Cal.4th 104, 124.

[68] *Izazaga v. Superior Court, supra,* 54 Cal.3d 356 at p. 378.

limit . . . due process rights of criminal defendants," and the discovery statutory scheme which includes section 1054.1 "does not attempt to do so."[69]

Grand jury proceedings are conducted in secret.[70] More specifically, grand jurors work in "private," vote and deliberate in "secret," take an oath not to disclose evidence, and only authorized persons (such as a district attorney) may be present during grand jury proceedings.[71] But the secrecy of grand jury proceedings does not mean that grand jury material, such as testimony and exhibits, may never be disclosed.[72]

California statutes expressly provide for disclosure of grand jury materials by the court in particular circumstances. For example, under sections 938 and 938.1, if a grand jury returns an indictment against a defendant, the grand jury transcript shall be provided to the defense and soon after made public.[73] And if a grand jury does not indict the accused, section 924.6(a) provides that the court, upon a party's application, "shall" disclose grand jury testimony that is relevant and admissible to a pending or subsequent criminal proceeding.[74] Also, under section 924.2, a court may release, under a protective order, relevant impeachment material from a grand jury transcript.[75] Those provisions all address when grand jury material is available from the *court*. In contrast, section 1054.1 is a criminal discovery statute that pertains to the duties of disclosure by a prosecuting attorney.[76]

---

[69] *Ibid*.

[70] See, e.g., *Douglas Oil Co. of California v. Petrol Stops Northwest* (1979) 441 U.S. 211, 218, fn. 9; *People v. Garcia*, *supra*, 52 Cal.4th at p. 729; but see Pen. Code, § 939.1 (limited public sessions). The Court of Appeal discussed reasons for secrecy in *People* v. *Superior Court* (*Mouchaourab* and other cases) (2000) 78 Cal.App.4th 403, 415-416.

[71] Pen. Code, §§ 911, 915, 924.2, 939.

[72] For instance, a federal rule generally allows disclosure of grand jury transcripts when directed by a court. (*Goldstein v. Superior Court* (2008) 45 Cal.4th 218, 229-230, citing Fed. Rules Crim. Proc., rule 6(e)(3)(E), 18 U.S.C.)

[73] Pen. Code, §§ 938-938.1; but see Pen. Code, § 938.1, subd. (b) (disclosure to public may be delayed pending court determination whether to seal until trial completion to avoid prejudicing defendant's right to fair and impartial trial).

[74] Pen. Code, § 924.6, subd. (a); *Goldstein v. Superior Court*, *supra*, 45 Cal.4th at p. 228.

[75] *Goldstein v. Superior Court*, *supra*, 45 Cal.4th at p. 234, citing Pen. Code, § 924.2.

[76] Pen. Code, § 1054.1.

**Brady *Does Not Exclude Materials from Criminal Grand Jury Proceedings***

We first address the *Brady* question. To begin, California law on grand jury secrecy cannot override federal constitutional due process principles as enunciated by *Brady* and its progeny. The supremacy clause of the United States Constitution provides the relevant authority.[77] That clause provides, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . *shall be the supreme Law of the Land*; *and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding*."[78] Since state laws cannot trump the requirements of the federal Constitution, the question here is whether *Brady* itself recognizes a carve-out for materials from criminal grand jury proceedings. We conclude that it does not.

The constitutional requirement described in *Brady* and its progeny contains no express exception for criminal grand jury materials, and we have found no authority implying the existence of such an exception. The lack of such an exception is sensible in our view.

As the Ninth Circuit has explained, the "purpose of *Brady* is to ensure that 'criminal trials are fair'" and to prevent "a miscarriage of justice."[79] The *Brady* right is premised on the notion that "our system of the administration of justice suffers when any accused is treated unfairly."[80] And the right of criminal defendants to a fair trial imposes certain duties on prosecutors, consistent with the sovereign obligation to ensure "that 'justice shall be done'" in all criminal prosecutions.[81]

By "[p]lacing the burden on prosecutors to disclose information," *Brady* "'illustrate[s] the special role played by the American prosecutor in the search for truth in criminal trials.'"[82] While "the State is obliged to "prosecute with earnestness and vigor," it "is as much [its] duty to refrain from improper methods calculated to produce a

---

[77] *Quesada v. Herb Thyme Farms, Inc.* (2015) 62 Cal.4th 298, 307 ("supremacy clause . . . makes federal law paramount").

[78] U.S. Const. art. VI, cl. 2, italics added.

[79] *Amado v. Gonzalez* (9th Cir. 2014) 758 F.3d 1119, 1133, quoting *Brady*, *supra*, 373 U.S. at p. 87 and *United States v. Bagley*, *supra*, 473 U.S. at p. 675.

[80] *Brady v. Maryland*, *supra*, 373 U.S. at p. 87.

[81] *United States v. Agurs* (1976) 427 U.S. 97, 111, quoting *Berger v. United States* (1935) 295 U.S. 78, 88.

[82] *Amado v. Gonzalez*, *supra*, 758 F.3d at p. 1133, quoting *Strickler v. Greene* (1999) 527 U.S. 263, 281.

16

wrongful conviction as it is to use every legitimate means to bring about a just one."[83] Indeed, as Justice Marshall observed, "[a] prosecutor's duties under *Brady* form "the essence of due process of law," because "[i]t is the State that tries a man, and it is the State that must insure that the trial is fair."[84] If the State "has in its exclusive possession specific, concrete evidence which is not merely cumulative or embellishing and which may exonerate the defendant or be of material importance to the defense . . . the State is obliged to bring it to the attention of the court and the defense."[85]

We see no reason why that same obligation would not apply when concrete evidence of material importance to the defense appears in material from a criminal grand jury proceeding. We acknowledge, of course, the long tradition of secrecy in grand jury proceedings.[86] That tradition serves important purposes. It protects the "innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."[87] It "prevent[s] the escape of those whose indictment may be contemplated."[88] It "encourage[s] free and untrammeled disclosures by persons who have information with respect to the commission of crimes."[89] It "insure[s] the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors."[90] And it "prevent[s] subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it."[91]

---

[83] *Cone v. Bell* (2009) 556 U.S. 449, 469, quoting *Berger v. United States*, *supra*, 295 U.S. 78, 88.

[84] *Moore v. Illinois* (1972) 408 U.S. 786, 809-810 (J. Marshall, concurring in part and dissenting in part).

[85] *Giles v. State of Md.* (1967) 386 U.S. 66, 100 (J. Fortas, concurring in the judgment).

[86] See *People v. Superior Court* (*Mouchaourab* and other cases), *supra*, 78 Cal.App.4th at p. 414 ("The secret grand jury has been a part of California's criminal justice system since its beginning").

[87] *Douglas Oil Co. of California v. Petrol Stops Northwest*, *supra*, 441 U.S. at p. 219, fn. 10; see also *People v. Superior Court* (*Mouchaourab* and other cases), *supra*, 78 Cal.App.4th at pp. 415-416.

[88] *Douglas Oil Co. of California v. Petrol Stops Northwest*, *supra*, 441 U.S. at p. 219, fn. 10.

[89] *Ibid*.

[90] *Ibid*.

[91] *Ibid*.

Notwithstanding these important purposes, our State provides for certain disclosures by the court of once-secret information after the grand jury proceedings end.[92] Those statutorily authorized disclosures perhaps reflect the reality that many of the purposes served by secrecy diminish (or disappear altogether) once the proceedings are complete.[93] For example, "[t]he risk of flight is less of a concern since the indicted defendant has been accused and presumably will have been arrested"; and "[t]here is no longer a need to prevent the importuning of grand jurors, since they have completed their deliberations and have returned the indictment."[94]

And even where criminal grand jury proceedings are ongoing, the interests served by grand jury secrecy do not rise to a level where they might outweigh defendants' constitutionally enshrined right to a fair trial. In other words, the due process rights protected by *Brady* override our system's general preference for secrecy concerning criminal grand jury materials. To the extent that disclosures of certain evidence related to ongoing criminal grand jury proceedings would undermine the purposes described above, the answer is not to exclude those materials from the *Brady* right, but for the prosecution to seek a protective order to address any particularized concerns.[95]

Numerous cases involving federal or out-of-state grand juries accord with our view that the secrecy of criminal grand jury proceedings does not excuse prosecutors from their disclosure obligations under *Brady*. For example, the Fourth Circuit vacated a conviction and sentence and remanded the case to the district court to determine whether

---

[92] As mentioned above, the grand jury transcript is not only disclosed to the defendant but also becomes public in California after an indictment. (See Pen. Code, §§ 938 and 938.1.) When there is no indictment—meaning, the transcript remains secret—section 924.6 authorizes court disclosure of the testimony that is relevant and admissible to another criminal proceeding. (Pen. Code, § 924.6; see Pen. Code, §§ 938 and 938.1 (disclosure of transcript); see also note 75 and accompanying text, *ante*.)

[93] See *People v. Superior Court* (*Mouchaourab* and other cases), *supra*, 78 Cal.App.4th at p. 416 ("Where the grand jury proceeding has resulted in a criminal indictment, the same reasons for maintaining the secrecy requirements are no longer present").

[94] *Id*. at p. 416.

[95] See, e.g., *Millaud v. Superior Court* (1986) 182 Cal.App.3d 471, 476 ("We have no doubt the broad power of the trial court to fashion criminal discovery procedures satisfying, so far as possible, the legitimate needs of all parties, includes the power to issue protective orders preventing unjustified use of the requested materials. . . . We see no reason why the court cannot protect against disclosure which would hamper a third party or injure its interests, as well as prevent disclosure which would harm the prosecution").

grand jury testimony was material under *Brady*.[96]  A federal district court in our State concluded that the federal government violated its *Brady* obligations by withholding grand jury transcripts.[97]  Another district court in West Virginia concluded that *Brady* required disclosure of "exculpatory portions of grand jury testimony of government witnesses that could potentially require investigation by the defense," and granted a motion to produce "exculpatory information contained in the grand jury testimony of government agents."[98]  The New York Court of Appeals found a due process violation under *Brady* when the prosecution failed to disclose, at a suppression hearing, grand jury testimony that was facially favorable to the defense.[99]  Similarly, as the requestor has noted, the Supreme Judicial Court of Massachusetts held that there was a *Brady* obligation to disclose grand jury testimony to unrelated defendants who were not the subject of the grand jury's proceeding.[100]  In addition, other federal circuit and district court cases have indicated that *Brady* does apply to grand jury materials even though the facts of the particular cases did not show a violation had occurred.[101]  In contrast, we

---

[96] *U.S. v. King* (4th Cir. 2011) 628 F.3d 693, 703-704.

[97] *U.S. v. Aguilar* (C.D. Cal. 2011) 831 F.Supp.2d 1180, 1206.

[98] *U.S. v. Shifflett* (W.D. Va. 1992) 798 F.Supp. 354, 355, 358.

[99] *People v. Geaslen* (1981) 54 N.Y.2d 510, 516.

[100] *Matter of Grand Jury Investigation* (2020) 485 Mass. 641, 642, 658; see Requestor letter, pp. 12-13.

[101] See, e.g., *U.S. v. Christensen* (9th Cir. 2015) 624 Fed.Appx. 466, 484-485 (nondisclosure of grand jury testimony did not violate *Brady* because it was not material); *U.S. v. Span* (9th Cir. 1992) 970 F.2d 573, 582-583 (no reversible *Brady* error for delayed disclosure of grand jury testimony because delay was not prejudicial); *U.S. v. Kerr* (9th Cir. 1992) 981 F.2d 1050, 1052 (grand jury testimony was immaterial under *Brady*); *U.S. v. Vaccaro* (9th Cir. 1987) 816 F.2d 443, 452, abrogated on other grounds (grand jury testimony could not have affected outcome, citing *Brady*); *U.S. v. Natale* (2d Cir. 1975) 526 F.2d 1160, 1171 (no suppression of favorable evidence to support *Brady* violation involving grand jury testimony); *U.S. v. Sitzmann* (D.D.C. 2014) 74 F.Supp.3d 128, 134, 137-138 (nondisclosure of grand jury testimony was not *Brady* violation because elements for such violation were not met); *Williams v. State* (Ala. Crim. App. 1996) 710 So.2d 1276, 1296-1297 (nondisclosure of grand jury testimony was not *Brady* violation because it was not material exculpatory or impeachment evidence); *U.S. v. Persico* (S.D.N.Y. 1985) 621 F.Supp. 842, 870 (no *Brady* issue because defendant had "actual knowledge" of portion of grand jury testimony that defendant "believes is exculpatory"); *Green v. State* (Md. Ct. Spec. App. 1975) 25 Md.App. 679, 703 (*Brady* claim for grand jury testimony failed because defendant did not show evidence was material, demonstrably favorable, and not already known).

have found no case holding that *Brady* incorporates some sort of carve-out that would exclude criminal grand jury material from its reach.

### *Section 1054.1 Does Not Exclude Materials from Criminal Grand Jury Proceedings*

We now turn to the section 1054.1 question. Again, the statute requires the prosecution to disclose the names and addresses of intended prosecution witnesses, statements of all defendants, all relevant evidence from the investigation of the charged offenses, felony convictions of material witnesses whose credibility will likely be critical to the trial outcome, any exculpatory evidence, and relevant witness statements (and related items such as reports and examinations) that the prosecution intends to offer at trial.[102]

The statute is part of the chapter governing criminal discovery. The chapter's introductory provision, section 1054, instructs us to interpret the chapter so as to give effect to section 1054's stated purposes. Those purposes include a directive in subdivision (e) for criminal discovery to occur *only* as provided by the chapter, other express statutes, or the federal Constitution.[103] Section 1054 in its entirety provides:

This chapter shall be interpreted to give effect to all of the following purposes:

(a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery.

(b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested.

(c) To save court time in trial and avoid the necessity for frequent interruptions and postponements.

(d) To protect victims and witnesses from danger, harassment, and undue delay of the proceedings.

(e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States.

---

[102] Pen. Code, § 1054.1.

[103] Pen. Code, § 1054. As the Court of Appeal observed, this directive does not preclude discovery when "required to vindicate rights guaranteed by the California Constitution." (*Magallan v. Superior Court* (2011) 192 Cal.App.4th 1444, 1462.)

As a general matter, nothing in the Penal Code excludes criminal grand jury material from section 1054's general directive for criminal discovery to be conducted as provided by the discovery chapter, other express statutes, and the Constitution. Nor is there any express exclusion of criminal grand jury material from section 1054.1's ambit. We note, however, that just because material from a criminal grand jury proceeding may be listed in section 1054.1, disclosure of any given material could nevertheless be prohibited under another statute, such as the good-cause exception for "threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement."[104] And, of course, even where material does have to be disclosed to the defendant under section 1054.1, in appropriate circumstances the prosecutor may seek a protective order to prohibit the public dissemination of the document.[105]

Although we have found no case directly addressing the question under section 1054.1, the Court of Appeal has spoken on the general subject of disclosure of grand jury material. The Court recognized that "although the grand jurors were sworn to secrecy regarding disclosure of evidence, after the indictment is handed down a transcription of the entire testimony is made available to the indicted defendant, to the district attorney and to the public," citing sections 938 and 938.1.[106] With regard to nontestimonial material, the Court recognized that section 1054(e) "allows for discovery authorized by 'other express statutory provisions.'"[107] The Court identified such authority in statutes authorizing and providing grounds for a defendant's motion to dismiss the indictment.[108] The Court's reasoning illustrates that the general principle that criminal grand jury materials are secret does not prevent discovery of such materials when statutorily authorized.

The above case arose when defendants sought discovery of information from the grand jury proceeding that resulted in the defendants' indictment. But as we have seen, these issues could arise with unrelated defendants, and in situations where there is no indictment and therefore no public grand jury transcript.[109] Regardless of the particular

---

[104] See Pen. Code, § 1054.7.

[105] See generally *Millaud v. Superior Court*, *supra*, 182 Cal.App.3d at p. 476.

[106] *People v. Superior Court* (*Mouchaourab* and other cases), *supra*, 78 Cal.App.4th at p. 416.

[107] *Id*. at p. 436. Examples of nontestimonial material would include exhibits and comments by the district attorney to the grand jury. (See *id*. at p. 430.)

[108] *Id*. at pp. 429 ("sections 995, 939.71 and to a certain extent section 939.6 provide the requisite 'express statutory provisions,' within the meaning of section 1054, subdivision (e), authorizing discovery of nontestimonial grand jury proceedings"), 436.

[109] See, e.g., note 100, *ante*, and accompanying text.

21

scenario, however, we see no basis in section 1054.1 to exclude material from criminal discovery on the ground that it derives from criminal proceedings before a grand jury.